**James R. WOOLERY, Plaintiff–Appellee,**

v.

**A.J. ARAVE, Warden, Idaho Maximum Security Institution, Defendant–Appellant.**

No. 91–36029.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 1, 1993.

Decided Oct. 26, 1993.

Gar Hackney, Lynn, Scott, Hackney & Jackson, Boise, ID, for plaintiff-appellee.

Myrna A.I. Stahman, Asst. Atty. Gen., Boise, ID, for defendant-appellant.

Before: WRIGHT, CANBY, and REINHARDT, Circuit Judges.

CANBY, Circuit Judge:

Idaho appeals the district court's grant of James Woolery's petition for a writ of habeas corpus. Woolery's petition alleged that he was entitled to relief because evidence of a blood alcohol test introduced at his trial in state court was obtained in violation of his Fourth Amendment rights. In its response to Woolery's petition in district court, the State of Idaho neglected to assert that the claim was barred by the rule of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The magistrate judge and the district court consequently reached the merits of Woolery's Fourth Amendment claim. On appeal from the district court's grant of Woolery's petition, Idaho argues that it was not required to raise the *Stone* rule as an affirmative defense, and that, in light of *Stone,* Woolery's petition should be denied.

■ The question before us is whether, absent a showing that the state denied a full and fair opportunity to litigate the Fourth Amendment claim, the rule of *Stone v. Powell* precludes the federal court from enforcing the exclusionary rule through the writ of habeas corpus even though the state has failed to raise the *Stone* issue. We conclude that *Stone* has that effect. Accordingly, we reverse and remand.

## DISCUSSION

In *Stone v. Powell,* the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494, 96 S.Ct. at 3052. The holding is grounded in the Court's conclusion that in cases where a petitioner's Fourth Amendment claim has been adequately litigated in state court, enforcing the exclusionary rule through writs of habeas

corpus would not further the deterrent and educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism. *Id.* at 493–494, 96 S.Ct. at 3051–52; *see also id. Withrow v. Williams,* —— U.S. ——, ——, 113 S.Ct. 1745, 1750, 123 L.Ed.2d 407 (1993) ("[W]e simply concluded in *Stone* that the costs of applying the exclusionary rule on collateral review outweighed any potential advantage to be gained by applying it there.").

There is no indication in the language of the opinion that the Court intended for the *Stone* rule to apply only when the state raised it in timely fashion. On the contrary, the Court made clear that the rule is a categorical limitation on the scope of the exclusionary rule:

> Our decision does not mean that the federal court lacks jurisdiction over such a claim, but only that *the application of the rule is limited* to cases in which there has [sic] been both ... a showing [that the state court did not provide the petitioner with an opportunity to fully and fairly litigate his Fourth Amendment claims] and a Fourth Amendment violation.

*Id.* 428 U.S. at 495 n. 37, 96 S.Ct. at 3053 n. 37 (emphasis added).

■ The exclusionary rule is a creation of the judiciary. *Kimmelman v. Morrison,* 477 U.S. 365, 376, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986). In a series of decisions, the Supreme Court has given the rule shape and definition. 428 U.S. at 485, 96 S.Ct. at 3048. In *Stone v. Powell,* the Court limited the occasions on which petitioners in habeas proceedings could challenge a state court's failure to exclude evidence on Fourth Amendment grounds; the claim could be entertained only when the petitioner had not had an adequate opportunity to litigate his Fourth Amendment claims in state court. *See id.* at 488, 96 S.Ct. at 3049 (stating that negligible benefits derived through enforcing exclusionary rule through habeas corpus proceedings would be outweighed by resultant intrusion on federalism and comity). Accordingly, we conclude that absent a showing by

Woolery that the state court did not afford him an adequate hearing on his Fourth Amendment claim, the federal court may not award relief for the claim through enforcement of the exclusionary rule.

Our reading of *Stone* is consistent with our decision in *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 n. 3 (9th Cir.1980), in which we held that a "fourth amendment claim is *not cognizable* as a basis for federal habeas relief, where the state has provided an opportunity for full and fair litigation of the claim" (emphasis added). This language indicates that unless the district court finds that the petitioner has made the requisite showing, the court may not grant relief on the petitioner's Fourth Amendment claims. While this requirement may be prudential rather than jurisdictional, it is founded in policy considerations that oblige the court to raise the issue *sua sponte* if the state neglects to assert it.[1] *Accord Davis v. Blackburn*, 803 F.2d 1371, 1372–73 (5th Cir.1986).[2]

We are mindful that in our recent decision in *Boardman v. Estelle*, 957 F.2d 1523, 1534–37 (9th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992), we ruled that when a state has failed to raise in district court the *Teague* "new rule" defense, *see Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the appeals court retains discretion to refuse to recognize the defense. *Boardman*, 957 F.2d at 1537. *Boardman* is different from our case. At the core of the holding in *Boardman* is the court's recognition that there are some circumstances under which an appeals court's refusal to entertain a state's untimely new rule defense will not intrude on the principles of comity and federalism. *Id.* at 1536–37. In such cases, the appellate court is not required to raise the *Teague* rule *sua sponte*. *Id.* at 1536; *see also Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987) (appeals court retains qualified discretion to address merits of habeas corpus petitioner's claims when state fails to assert in district court proceedings that petitioner has not exhausted state court remedies).

The language and reasoning of the *Stone* decision compel a different conclusion in the present case. In part, *Stone* is based on the same considerations of judicial efficiency, finality, and federalism that underlie other procedural requirements surrounding federal habeas. *See Stone*, 428 U.S. at 491 n. 31, 96 S.Ct. at 3051 n. 31; *Withrow v. Williams*, —— U.S. at ——, 113 S.Ct. at 1750. But the

---

1. We are not dealing with a case where a federal court determined not to invoke *Stone v. Powell* because the Fourth Amendment claim being asserted was patently without merit. *See Tart v. Massachusetts*, 949 F.2d 490, 497 n. 6 (1st Cir. 1991). We express no opinion on the propriety of that procedure.

2. The dissent takes issue with our requirement that the district court invoke *Stone* sua sponte, and states that *Davis* only provides for a permissive invocation of *Stone* sua sponte by the appellate court. We see little distinction in the effect of our ruling and that in *Davis*. In *Davis*, the Fifth Circuit stated: "we are obliged to apply *Stone* as a prudential limitation on the exercise of our jurisdiction here, even if it must be raised *sua sponte*." *Davis*, 803 F.2d at 1372–73. If the appellate court is obliged to apply *Stone* sua sponte, then the district courts must, as a practical matter, do so as well.

The other two circuit court decisions cited by the dissent offer but weak support for overlooking the *Stone* rule when the state fails to raise it in timely fashion. In *Wallace v. Duckworth*, 778 F.2d 1215 (7th Cir.1985), the court held that the prisoner's petition must be dismissed for failure to exhaust, and that it was therefore not necessary to deal with the *Stone* question. It also added that the state had not raised the *Stone* argument, and that, as a non-jurisdictional rule, the court need not raise it *sua sponte*. *Id.* at 1219–20 n. 1. Judge Posner would not have considered the exhaustion issue "since the petition for habeas corpus is in any event frivolous in light of *Stone v. Powell*." *Id.* at 1226.

In *Tart v. Massachusetts*, 949 F.2d 490 (1st Cir.1991), the court stated: "As a preliminary matter, neither Tart nor the Commonwealth raised the issue in the district court as to whether Tart was afforded a 'full and fair opportunity' to present his fourth amendment claim in state court. Absent such a showing by the petitioner, principles of comity require that federal habeas review of fourth amendment claims be refused." *Id.* at 497 n. 6. The court also noted that the petitioner was at peril relying on the state's failure to raise the issue, in light of decisions in the Fifth Circuit recognizing discretionary authority of the appellate court to raise *Stone* sua sponte. *Id.* The *Tart* court then stated that it would not need to rely on the default because it was in full agreement with the Supreme Judicial Court of Massachusetts on the Fourth Amendment issue. *Id.*

remaining considerations in *Stone* were the limitations inherent in the exclusionary rule itself; it excluded "the most probative" evidence, and the deterrent value that supported its application in direct proceedings was not materially enhanced by applying it on collateral review. *Stone*, 428 U.S. at 489–90, 493–94, 96 S.Ct. at 3050, 3051–52. "In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of application of the rule persist with special force." *Id.* at 494–95, 96 S.Ct. at 3052–53 (footnote omitted). The Court couched its ruling in terms of a requirement: To be eligible for habeas relief on Fourth Amendment claims, a petitioner must demonstrate that the state court has not afforded him a full and fair hearing on those claims. *Id.* at 494 n. 37, 96 S.Ct. at 3052 n. 37. We read *Stone* as a categorical limitation on the applicability of fourth amendment exclusionary rules in habeas corpus proceedings. *See id.* at 495, 96 S.Ct. at 3053; *Kimmelman*, 477 U.S. at 376, 106 S.Ct. at 2583.

It is true, as the dissent argues, that when other types of claims are urged on habeas, we will often consider a procedural barrier to be waived if the state does not assert it. *See, e.g., Jenkins v. Anderson*, 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127 n. 1, 65 L.Ed.2d 86 (1980) (default in failing to raise self-incrimination claim in state trial waived by state's failure to assert it); *Suniga v. Bunnell*, 998 F.2d 664, 667 (9th Cir.1993) (failure to object to instruction that violated due process no bar when state has not asserted default). In those cases, however, there was nothing inappropriate about entertaining the constitutional claim for relief in federal court; if no procedural defaults had occurred, the federal

court would have reviewed the claims in habeas proceedings as a matter of course. In *Stone*, the Supreme Court made it clear that, if all procedural requirements are scrupulously followed, a fourth amendment claim for exclusion of evidence is *not* to be enforced in habeas proceedings.

## CONCLUSION

 We reverse the district court's decision granting Woolery habeas relief without consideration of *Stone v. Powell*. We remand for further proceedings to afford Woolery the opportunity to show that the state court did not offer him a full and fair opportunity to litigate his Fourth Amendment claim.[3] If he fails to make such a showing, his Fourth Amendment claim must be dismissed.

**REVERSED AND REMANDED.**

REINHARDT, Circuit Judge, dissenting:

### I.

The Great Writ of habeas corpus is not a very popular instrument these days. Surprisingly, it is the federal judiciary which appears to find the use of the writ increasingly distasteful. A habeas corpus petitioner must cross a field filled with procedural landmines before the merits of his claims may be heard in federal court: exhaustion of remedies, procedural default, abuse of the writ, etc. Often he must do so without the help of a lawyer because there is no right to counsel on collateral attack, even though fundamental constitutional rights are ordinarily at stake. The various doctrinal obstacles provide abundant opportunities for state officials to foreclose any decision on the merits of the habeas application simply by resorting to proce-

---

**3.** The dissent seems to suggest that, because Woolery argued in his trial brief that he had not been afforded a full and fair opportunity to litigate his claims in state court, and the state did not argue to the contrary, that the magistrate judge or the district court were justified in concluding that he had not been afforded that opportunity. That is not the manner in which the magistrate judge and district judge proceeded. The magistrate judge ruled that, because the State had not raised the "affirmative defense" of *Stone*, he would not apply it. No ruling was

made on the full and fair opportunity to litigate. The district judge simply reviewed the fourth amendment merits de novo, and reached a conclusion contrary to the magistrate judge and in favor of Woolery.

We agree with the dissent that Woolery's failure to assert in his petition that he had not had a full and fair opportunity to litigate his claim is not fatal in light of his trial brief. All that this leniency means, however, is that Woolery is now entitled to make his case on that issue; he has not waived it.

dural arguments. The states' attorneys handling habeas cases are presumably well-trained and skilled litigators who possess, or at the very least ought to be charged with, detailed knowledge of the governing law. They usually have all the advantages on their side when they litigate against a habeas petitioner. It is difficult for me to understand why, under these circumstances, when states' attorneys fail to raise the appropriate legal arguments in a given case, the courts should excuse the very types of failures that we are unwilling to excuse when the petitioner is the party in default. After all, ours is supposed to be an adversary and even handed-system of justice. If it truly is, it should not only be the petitioner who forfeits his rights when he fails to raise them in a timely manner.[1]

In this case, the state of Idaho failed to challenge petitioner James Woolery's contention that the rule of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), did not bar consideration of his Fourth Amendment claims on collateral review. In his pretrial brief Woolery specifically stated that "[t]he key issue" before the court was whether he had been "provided with an opportunity for full and fair litigation of his fourth amendment claim." [2] Woolery asserted that he had not, and at no time did the state allege or argue otherwise. Respondent prevailed *on the merits* of Woolery's claim

before the magistrate judge to whom Woolery's petition had been referred under 28 U.S.C. section 636(b).[3] Idaho did not object to the district judge's consideration of the merits of Woolery's petition until long after he had rejected the magistrate judge's recommendation and granted Woolery's habeas corpus application. Only on appeal did the state change its legal position and contend, for the first time, that consideration of the merits of Woolery's petition was barred by *Stone v. Powell*.[4] It also argued, without citing any supporting authority, that *Stone requires* a district court to make a determination whether a petitioner has received a full and fair opportunity to litigate his Fourth Amendment claims in state court even where the state has not asserted that he did.[·]

By excusing Idaho from what was either incompetent representation or an ill-advised litigation strategy and by accepting respondent's novel interpretation of *Stone v. Powell*, the majority, in effect, creates for the benefit of states' attorneys an unwarranted and unprecedented exception from the rule that district courts are under no obligation to raise non-jurisdictional issues *sua sponte*.[5] In doing so, my colleagues misconstrue the theoretical basis for the Supreme Court's decision in *Stone*. Additionally, the majority's decision conflicts with the approach taken by all

---

1. For example, a state habeas petitioner who files his appeal three days late forfeits his right to have his claims heard in federal court, even when he is facing execution and among his claims is one that he is innocent. *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

2. Although Woolery alleged the lack of a full and fair hearing in his pre-trial brief rather than in his habeas petition, the state does not argue that this technical error is of any significance and has thus forfeited the argument. The state's contention that Woolery's brief was somehow deficient for using the phrase "fair consideration" rather than "full and fair litigation" is not only incorrect (he used both terms) but is contrary to the rule that *pro se* litigants are not held to the standards of technical proficiency that are imposed upon members of the bar. Given the circumstances of this appeal, the state's criticisms of the adequacy of Woolery's submissions in the district court are particularly inappropriate.

3. Because of the state's failure to address the *Stone v. Powell* issue, the magistrate judge re-

fused to decide Woolery's petition on that ground.

4. While the rule in this circuit is that a party may pursue in the court of appeals claims of legal error by a magistrate judge even where no objection was raised in the district court, *Barilla v. Ervin,* 886 F.2d 1514, 1518 (9th Cir.1986), that principle is not dispositive here. In this case, the state failed to raise the relevant *issue* before the magistrate judge or the district court.

5. The majority's decision is ironic in light of the holding of another panel of this court that civil rights plaintiffs who fail to cite the relevant qualified immunity *cases* to the district court forfeit their right to have the court of appeals correct the judge's legal errors. *Elder v. Holloway,* 951 F.2d 1112 (9th Cir.1991), *amended* 975 F.2d 1388 (9th Cir.1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 3033, 125 L.Ed.2d 721 (1993). Given the disparity in resources between civil rights plaintiffs and states' attorneys, the double standard is particularly surprising.

the other circuits that have considered the question and ignores a number of our own precedents. My colleagues neglect to explain why a state's failure to invoke the *Stone* doctrine should be treated any differently from its failure to raise a petitioner's procedural default, which our case law holds may be forfeited unless timely raised. The end result of all this is that the majority erroneously permits the state to foreclose judicial review of the merits of Woolery's habeas petition.

## II.

As the majority acknowledges, *Stone*'s "full and fair litigation" rule is not in any sense jurisdictional. *E.g., Withrow v. Williams,* —— U.S. ——, ——, 113 S.Ct. 1745, 1750, 123 L.Ed.2d 407 (1993). Instead, it rests on concerns of prudence and equity. *Id.; id.* —— U.S. at ——, 113 S.Ct. at 1757 (O'Connor, J., concurring in part and dissenting in part); *id.* —— U.S. at——, 113 S.Ct. at 1767 (Scalia, J., concurring in part and dissenting in part). Habeas corpus relief is itself equitable in nature. The decision whether to grant the writ in a particular instance depends upon a number of factors including: the benefit of relief to the petitioner, the reliability of the judgment under attack, federalism, finality, and the effective utilization of scarce federal judicial resources. *See Withrow,* —— U.S. at ——, 113 S.Ct. at 1750. Based upon its weighing of these factors, the *Stone v. Powell* Court determined that a federal district court in its equitable discretion ought to refuse to entertain a habeas petition alleging a violation of the Fourth Amendment unless the petitioner did not receive a full and fair hearing in state court on that claim.

While the majority formally recognizes the proposition that *Stone* is not jurisdictional, it nevertheless rules that a federal district court is absolutely precluded from considering a petitioner's Fourth Amendment claims unless it first finds that he did not receive a full and fair hearing. Indeed, the majority holds that a district court *must* raise the full and fair hearing issue *sua sponte.* I am

aware of no other non-jurisdictional defect that *must* be raised by a district court on its own accord; in fact, the rule is settled that a district court is under no obligation to raise an issue *sua sponte* unless it relates to subject matter jurisdiction. *See, e.g., Valenzuela v. Kraft, Inc.,* 801 F.2d 1170, 1172–73 (9th Cir.1986) (if timely filing of action is jurisdictional then district court must raise issue *sua sponte;* if not, then lack of timeliness may be waived by non-assertion) *amended* 815 F.2d 570 (9th Cir.1987). As a result, in all but name, the majority has transformed *Stone v. Powell*'s principle of equitable discretion into a jurisdictional prerequisite.

The majority's holding conflicts with the approaches of three other circuits. The Seventh Circuit has held that a court *need not* raise *Stone v. Powell sua sponte. Wallace v. Duckworth,* 778 F.2d 1215, 1220 n. 1 (7th Cir.1985). While the majority cites the Fifth Circuit's decision in *Davis v. Blackburn,* 803 F.2d 1371 (5th Cir.1986) (per curiam), as being in "accord" with its own, *Davis* is actually in conflict with it. There, a divided panel of the Fifth Circuit held that an *appellate* court *may* raise *Stone v. Powell sua sponte.*[6] It did not hold that a district court was *required* to do so. As the First Circuit noted in a case in which it *reached* the merits of a Fourth Amendment habeas claim in part because the state had failed to raise *Stone* in the district court, *Davis* is based on the exercise of *discretion. Tart v. Massachusetts,* 949 F.2d 490, 497 n. 6 (1st Cir.1991). If, as the majority concludes, states really were incapable of forfeiting *Stone v. Powell* and district courts were mandated to raise it on their own, then federal appellate courts would be *required* to raise the bar themselves in every case. In other words, either *Stone* categorically prohibits a federal court from entertaining a habeas petition where the lack of a full and fair hearing has not been shown or it provides only a basis for the exercise of discretionary authority when equitable considerations so dictate. Three circuits have taken the latter approach; only the majority has endorsed the former.

---

**6.** For the reasons set forth in Judge Rubin's persuasive *dissent,* I think the *Davis* majority errcd in raising *Stone v. Powell* on its own, but that is another matter. *See infra* section III.

The majority attempts to justify its "categorical limitation" on the basis of language in footnote 37 of *Stone v. Powell* that a petitioner must *show* the lack of a full and fair hearing.[7] 428 U.S. at 494 n. 37, 96 S.Ct. at 3052 n. 37. Although that footnote is somewhat unclear and therefore susceptible to an overly broad reading, it simply does not answer the question before us and the majority's reliance on it is misplaced. Nothing in footnote 37 suggests that where, as here, a petitioner claims that his hearing was not full and fair, and the state fails to argue otherwise, a district judge cannot decide that the state has conceded the point and reach the merits of the petition. The footnote nowhere implies that a district court must raise *Stone v. Powell sua sponte.* The question whether a state must raise *Stone* is distinct from the one footnote 37 answers—that a petitioner must show the lack of full and fair hearing once the issue is raised by the state.

The law of procedural defaults clearly demonstrates the error that underlies the majority's overreading of footnote 37. Like *Stone v. Powell* the procedural default doctrine is based upon equitable principles. *Withrow,* —— U.S. at ——, 113 S.Ct. at 1757 (O'Connor, J., concurring and dissenting). In language remarkably similar to that found in footnote 37 the Court has held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can *demonstrate* cause for the default and actual prejudice from the violation of federal law or *demonstrate* that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991) (emphasis added). While the burden of showing "cause and prejudice" is on the petitioner, it is absolutely clear that if the state fails to *raise* the doctrine of procedural default, a federal court may reach the merits of

a habeas application. *See Jenkins v. Anderson,* 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127 n. 1, 65 L.Ed.2d 86 (1980); *Suniga v. Bunnell,* 998 F.2d 664, 667 (9th Cir.1993). The reason is simple: The equities that normally weigh against consideration of a procedurally defaulted claim, finality and federalism, do not have equivalent force where a state has not asserted an interest in compliance with its own procedural rules in the petitioner's federal habeas corpus proceedings. *See Harmon v. Ryan,* 959 F.2d 1457, 1461 (9th Cir.1992). Thus, if a state does not raise the procedural default issue in the district court, it may forfeit it on appeal.

Similarly, finality and federalism do not justify a rule requiring federal courts to refuse to hear Fourth Amendment claims where a state fails to assert its interest in the integrity of its own prior adjudication of them. Concerns of federalism and respect for a state's criminal judgment are marginal where a state commits a procedural forfeiture. *Boardman v. Estelle,* 957 F.2d 1523, 1537 (9th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). Comity does not require a court to be the state's advocate. *Davis v. Blackburn,* 803 F.2d at 1375 (Rubin, J., dissenting). The majority simply fails to acknowledge that its blanket exemption of state forfeitures in Fourth Amendment cases cannot be reconciled with our procedural default law.

At bottom, the *Stone v. Powell* rule is a derivative of issue preclusion principles. *See Withrow v. Williams,* —— U.S. at ————, 113 S.Ct. at 1767–68 (Scalia, J., concurring and dissenting) (tracing history of full and fair litigation principle). Ordinarily, if a party has already prevailed in the litigation of an issue on a prior occasion but does not raise the potentially preclusive effect of the previous determination, a court has *no obligation* to raise collateral estoppel *sua sponte.* Compare *Moore v. City of Paducah,* 890 F.2d 831, 833 n. 4 (6th Cir.1989) (under Fed. R.Civ.P. 8(c) collateral estoppel must be pled

---

**7.** The magistrate judge imprecisely described the *Stone v. Powell* bar as an "affirmative defense". While footnote 37 shows that this description is technically incorrect, Idaho never objected in the district court to the magistrate judge's terminology or his decision to rule on the merits of Woolery's claims.

or it will be deemed waived)[8] *with McCain v. Apodaca,* 793 F.2d 1031, 1032–34 & n. 2 (9th Cir.1986) (a court *is permitted* to raise preclusion doctrines *sua sponte* ); *accord Alyeska Pipeline Serv. Co. v. United States,* 688 F.2d 765, 771, 231 Ct.Cl. 540 (1982) (a court *may,* when necessary, raise claim or issue preclusion *sua sponte* although primary purpose of rule is for protection of adverse party), *cert. denied* 461 U.S. 943, 103 S.Ct. 2120, 77 L.Ed.2d 1301 (1983); *see also* Charles Alan Wright et al., 13 *Federal Practice and Procedure,* § 4405, 32–33 (1981) (both claim and issue preclusion may be waived by party entitled to demand preclusion). A state that fails to argue that a habeas petitioner's Fourth Amendment claim was fully and fairly litigated in state court is not entitled to an exemption from the rule that preclusion is an argument that can be forfeited.

Assuming for the sake of argument that the majority is correct that *Stone v. Powell* is a categorical limitation on the *authority* of district courts to consider claims of Fourth Amendment violation occurring in state prosecutions—and I believe it clearly is not— such a conclusion would still not prevent a forfeiture by Idaho. Such limitations are treated differently from jurisdictional limitations.[9] In *Martinez v. Ylst,* 951 F.2d 1153, 1156–57 (9th Cir.1991), we decided that the state could forfeit the argument that a petitioner's claim was non-constitutional and therefore *not cognizable* on habeas corpus. There is no question that a court has "no authority" to grant habeas relief for non-constitutional trial errors. *See* 28 U.S.C. §§ 2241(c) & 2254(a). However, in *Martinez* we did not conclude that this fact compelled the adoption of a special rule for the state's benefit. There, we treated the state like any other litigant and held that by litigating the error as a constitutional one in the trial court and by failing to raise a contrary view until its reply brief in the court of appeals, it had forfeited its argument that the error was non-constitutional. That the state failed to raise the relevant argument in its opening brief as well as in the district court in *Martinez* does not meaningfully distinguish that case from the instant one. *Martinez* shows that an argument that a case does not fall within the class of claims cognizable on habeas can be forfeited through a failure to raise it. *Martinez* 's reasoning is controlling here and the majority's decision that *Stone v. Powell* cannot be forfeited is in conflict.

In short, if a state does not assert an interest in the finality of its own proceedings, it forfeits its right to insist that federal courts not consider a particular habeas petition. That is as true with respect to Fourth Amendment claims as with all others. A federal court is not required to raise *Stone v. Powell sua sponte.* It may choose to do so or it may, in the exercise of its equitable discretion, reach the merits of a habeas application alleging a deprivation of Fourth Amendment rights. The majority's imposition of a duty upon district courts to raise the preclusive effect of a prior state proceeding is simply unwarranted under precedent, general principles of habeas corpus, or the rules of procedure.

### III.

While a federal appellate court, like a district court, is *permitted* to raise *Stone v. Powell* on its own, I would not do so as a general matter, nor would I do so in the instant case. *See Davis v. Blackburn,* 803 F.2d at 1373–75 (Rubin, J., dissenting). It is our standard practice, except in limited circumstances, not to consider issues that the parties fail to raise in the district court, and I see no reason to depart from that policy with state forfeitures in Fourth Amendment cases. Where a violation of constitutional rights has been claimed, a federal court should not ordinarily remedy the procedural failures of the alleged constitutional violator and thereby prevent consideration of those claims on the merits. That is especially true in a case such as this one where the petitioner's claims of constitutional deprivation are meritorious.

8. Under Rule 11 of the Rules Governing Habeas Corpus, the Federal Rules of Civil Procedure may be applied on habeas corpus to the extent that they are not inconsistent with the Rules Governing Habeas Corpus.

9. As is demonstrated *supra,* 1) the limitation here is not *jurisdictional* and 2) only where the issue *is* jurisdictional are the federal courts *required* to raise the question of their right to proceed *sua sponte.*

In *Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), the Supreme Court held that federal appellate courts *may choose* to consider a state's argument that a habeas petitioner's claims are not properly exhausted, even if the argument was not raised before the district court. The Court explicitly rejected the state's position that a federal appellate court *must* consider such arguments. *Id.* at 131–33, 107 S.Ct. at 1673–74. *Granberry* holds that appellate courts should decide on a case by case basis whether to hear non-exhaustion arguments not presented below. *Id.* at 134–36, 107 S.Ct. at 1675–76. However, cases involving a state's failure to raise a *Stone v. Powell* objection call for a less lenient and less flexible standard.

*Granberry* clearly assumed that a petitioner could present any non-exhausted claims to a state court after the initial dismissal of his federal habeas application and that he could thereafter obtain federal review. *See id.* at 134–35, 107 S.Ct. at 1675. However, the consequences of addressing a non-exhaustion claim are quite different from those that usually follow from a state's invocation of *Stone v. Powell.* In cases like the one before us, the result is most often outright dismissal of a petition with no further opportunity for consideration of the merits by *any* court. Given the basic principle that we ought to decide cases on their merits, I believe that we should presumptively decline to consider a *Stone v. Powell* argument when it is raised for the first time on appeal. Accordingly, I would treat Idaho's failure to argue that Woolery's claim is barred by *Stone* as a forfeiture.

## IV.

On the merits, the district court correctly determined that under our decision in *United States v. Harvey*, 701 F.2d 800, 803–06 (9th Cir.1983), the seizure of Woolery's blood without his consent was in violation of his Fourth Amendment rights because he had not been formally placed under arrest. The district judge properly rejected the magistrate judge's conclusion that *Harvey* was undermined by *Skinner v. Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). *Skinner* permits a state

to have a *program* of requiring employees to undergo *urinalysis* after accidents. This case involves suspicion that a particular individual was intoxicated. *Skinner* rested in part on the fact that uniform and standardized investigations pose far less of a threat to Fourth Amendment rights and present less of a danger of overreaching by law enforcement than do intrusions based upon individualized circumstances. 489 U.S. at 621, 109 S.Ct. at 1415; *see also United States v. Martinez–Fuente*, 428 U.S. 543, 559, 96 S.Ct. 3074, 3083, 49 L.Ed.2d 1116 (1975) (routine stop of all vehicles to check for undocumented aliens mitigates possible abuse of discretion by officers) Moreover, the searches at issue in *Skinner* did not involve the actual drawing of fluids, in distinction to the search that occurred in *Harvey* and in the present case. *Skinner*, 489 U.S. at 625–26, 109 S.Ct. at 1417–18. Drawing blood is a physically invasive procedure; requiring a urine sample is not. As the district court correctly determined, *Harvey* is controlling.

Because the state forfeited its interest in the preclusive effect of the prior determination of Woolery's Fourth Amendment claim by not raising *Stone v. Powell* before either the magistrate judge or the district judge, I would reach the merits of his petition and decide them in Woolery's favor. Accordingly, I would affirm the judgment of the district court.