**Miguel Angel GONZALEZ,**
**Petitioner–Appellant,**

v.

**UNITED STATES of America,**
**Respondent–Appellee.**

Nos. 92–36820, 92–36821.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1993.

Decided Aug. 11, 1994.

Constance Crooker, Portland, OR, for petitioner-appellant.

Charles F. Gorder, Jr., Asst. U.S. Atty., Portland, OR, for respondent-appellee.

Before: REINHARDT, BRUNETTI, and FERNANDEZ, Circuit Judges.

Opinion by Judge BRUNETTI; Dissent by Judge REINHARDT

BRUNETTI, Circuit Judge:

Federal prisoner Miguel Angel Gonzalez appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate or modify his 168–month sentence, which was imposed after his guilty pleas to one count of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a) and 846, and to two counts of using a telephone to commit a felony in violation of 21 U.S.C. § 843(b). In an unpublished disposition of the direct appeal, this court affirmed Gonzalez's convictions and sentence. *United States v. Forcelledo,* Nos. 89–30335, 89–30336, 89–30337, 89–30338, 89–30340, 89–30342, 89–30343, 919 F.2d 146 (9th Cir. filed Nov. 20, 1990).

We review *de novo* the district court's denial of Gonzalez's § 2255 motion, *see United States v. Angelone,* 894 F.2d 1129, 1130 (9th Cir.1990), and we now affirm.

## DISCUSSION

Gonzalez claims that he was denied his right to a qualified court interpreter under the Court Interpreters Act, 28 U.S.C. § 1827 (1988), and that the lack of adequate interpretation more generally deprived him of certain Fifth and Sixth Amendment rights because he did not understand the nature and cause of the charges against him and the potential consequences of his guilty plea. He additionally argues that his attorney's failure to request a qualified interpreter to assist him in court proceedings, as well as his attorney's gross miscalculation of his likely sentence under the applicable United States Sentencing Guidelines, constituted ineffective assistance of counsel.

### A. Procedural Default

The government correctly points out that Gonzalez failed to raise these contentions during his direct appeal. Ordinarily, he might have to assert cause for this procedural default as well as actual prejudice resulting from the errors of which he complains. *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982); *but see Chambers v. United States,* 22 F.3d 939, 945–46 (9th Cir.1994) (noting inter-circuit conflict on whether *Frady* standard applies to § 2255 attacks on guilty pleas and unclear posture of Ninth Circuit law on the issue, but not resolving the question). At least some of Gonzalez's claims might not survive such a hurdle.

■ However, the government failed to assert procedural default in the district court proceedings on Gonzalez's § 2255 motion, and indeed it argued the merits of these claims. Other circuits have held that such a failure to assert default waives the issue. *See, e.g., United States v. Metzger,* 3 F.3d 756, 758 (4th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994); *United States v. Hicks,* 945 F.2d 107, 108 (5th Cir.1991); *Valladares v. United States,* 871 F.2d 1564, 1566 n. 2 (11th Cir.1989) (Powell, J.); *United States v. Hall,* 843 F.2d 408, 410 (10th Cir.1988).

This situation also differs from the recent case of *Woolery v. Arave,* 8 F.3d 1325 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1623, 128 L.Ed.2d 348 (1994), in which this court addressed waiver of the doctrine of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). First, in *Woolery* we noted that *Stone* represents "a categorical limitation on the scope of the [judicially-created] exclusionary rule." 8 F.3d at 1326. We held that the State of Idaho could not waive the *Stone* issue by failing to raise it in the district court's consideration of Woolery's § 2254 petition, because *Stone* eliminates the cognizability in federal habeas of exclusionary rule claims. *Id.* at 1326–28. By contrast, the Supreme Court's decision in *Frady* was not categorical—it simply imposed a cause and prejudice requirement for raising claims defaulted in an earlier federal pro-

ceeding. Unlike *Stone, Frady* did not eliminate the cognizability of an entire class of claims.

Second, *Woolery* was a collateral attack on a state-court proceeding, for which considerations of comity and federalism have great significance. Such concerns are absent in the context of Gonzalez's § 2255 motion. *See Metzger,* 3 F.3d at 758. In addition, although the *Frady* Court did observe that "the Federal Government, no less than the States, has an interest in the finality of its criminal judgments," 456 U.S. at 166, 102 S.Ct. at 1593, that interest is surely attenuated when the government itself fails to assert it during the district court's consideration of a collateral attack. Moreover, permitting the federal government to assert a procedural bar now would represent an unjustifiable double standard, since we would preclude a state from doing so. *See, e.g., Panther v. Hames,* 991 F.2d 576, 580 (9th Cir.1993). Assuming arguendo that *Frady* does apply to collateral attacks on guilty pleas, we hold that the government has waived application of *Frady's* cause and prejudice standard to Gonzalez's claims.

### B. Lack of a Qualified Interpreter

Gonzalez traces his right to a qualified interpreter to the Court Interpreters Act, 28 U.S.C. § 1827 (1988), which states in relevant part:

> The presiding judicial officer ... shall utilize the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise qualified interpreter, ... if the presiding judicial officer determines on such officer's own motion or on the motion of a party that such party (including the defendant in a criminal case) ...
>
> > (A) speaks only or primarily a language other than the English language ...
>
> *so as to inhibit* such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer ...

28 U.S.C. § 1827(d)(1) (emphasis added). Both the magistrate judge and the district court judge did quickly perceive that Gonzalez, whose primary language is Spanish, had some difficulties with English.

■ However, the statutory predicate for appointment of an interpreter is a finding by the presiding judicial officer, upon inquiry, that a non-primary English speaker's skills are so deficient as to "inhibit" comprehension of the proceedings. *See United States v. Lim*, 794 F.2d 469, 471 (9th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986); *see also United States v. Sanchez*, 928 F.2d 1450, 1455 (6th Cir.1991) ("Our inquiry as to a district court's decision concerning the appropriate use of interpreters in the courtroom focuses upon whether the purposes of the Act were adequately met."); *Valladares*, 871 F.2d at 1565; *United States v. Tapia*, 631 F.2d 1207, 1209 (5th Cir.1980). In accepting Gonzalez's guilty plea, the district court judge here specifically determined that Gonzalez's language difficulties did not constitute a "major" problem. This was a factual finding, and we review the cold record for clear error only. *United States v. Mayans*, 17 F.3d 1174, 1179 (9th Cir.1994); *Lim*, 794 F.2d at 471.

■ While the subsequently-filed presentence report contained the information that Gonzalez was a naturalized U.S. citizen, had lived in the United States for twenty years, and had been a principal in and worked for a variety of businesses, at the time of its inquiry the district court certainly knew that Gonzalez had lived in Oregon for ten years, was buying his own home, and worked in the auto and truck sales business. At Gonzalez's arraignment, where the defendant was represented by appointed counsel Norman Linstedt, the magistrate judge had also conducted the following colloquy:

Court: Do you understand?

Gonzalez: Yeah, little bit.

Court: What is your problem, language problem?

Gonzalez: Well, no. I don't know how to read that much. I understand. I understand.

At Gonzalez's change of plea hearing, where Linstedt continued as his attorney, the district court judge examined Gonzalez with a string of questions about the rudiments of his offenses. For example:

Court: What did you do? Did you work with other people to buy drugs and sell them?

Gonzalez: I used the telephone.

Court: In addition to using the phone, what did you do?

Gonzalez: I worked with Forcelledo.

Court: Did you sell drugs to people?

Gonzalez: Yes.

Court: Did you deliver drugs to people?

Gonzalez: Yes.

Court: Was that drug cocaine?

Gonzalez: Yes.

. . .

Court: Where did you get the drugs you sold?

Linstedt: You worked for Forcelledo?

Gonzalez: Right.

Court: Did you ever sell cocaine to somebody?

Gonzalez: Yes.

Court: Where did you get that cocaine?

Gonzalez: Get it from Forcelledo.

The court continued briefly, then Linstedt interjected:

I spent from about 7:00 o'clock this morning and any deficiency that he has in language, his wife is here and we fully discussed this and read all of these documents; and we have been doing the same thing for the last couple of months. As his lawyer, I am satisfied that his plea is an understanding plea and in his best interest if he did what he just told Your Honor he did.

The court concluded:

[T]here is some language difficulty but not a major one. The record should reflect that he has been in court when other defendants have entered a plea of guilty and that he has been assisted by competent counsel who has fully advised him of his rights and that he has also been assisted also by his wife who is able to assist the

attorney in explaining these matters to him.

Reviewing the record of the district court's *sua sponte* inquiry, we hold the district court did not clearly err in concluding that Gonzalez's comprehension was not sufficiently inhibited as to require an interpreter.[1] The defendant's answers were consistently responsive, if brief and somewhat inarticulate, and he only occasionally consulted his attorney. In addition, although his lack of objection is not dispositive, Gonzalez never indicated to the court that he was experiencing major difficulty, despite the opportunities afforded him. We therefore conclude that Gonzalez was not entitled to an interpreter under the provisions of the Court Interpreters Act. *Cf. Valladares,* 871 F.2d at 1566 ("To allow a defendant to remain silent throughout the trial and then ... assert a claim of inadequate translation would be an open invitation to abuse.").

■ As a result, use of interpreters was a matter for the district court's discretion, *see, e.g., Mayans,* 17 F.3d at 1179, and especially in light of Gonzalez's failure to object we cannot say that the court abused its discretion here. *See United States v. Yee Soon Shin,* 953 F.2d 559, 561 (9th Cir.1992); *Lim,* 794 F.2d at 471. Gonzalez's statutory and Fifth and Sixth Amendment claims based on lack of an interpreter fail as a result of these conclusions.

## C. *Ineffective Assistance*

Gonzalez claims here that Linstedt's failure to object to the lack of a court-appointed interpreter, as well as counsel's alleged gross miscalculation of the sentence he would likely receive upon pleading guilty, constituted ineffective assistance of counsel because he would not have pleaded guilty if he had had better information. This claim lacks merit.

1. *Ineffective Assistance in Failing to Request a Court–Appointed Interpreter.*

■ Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Gonzalez must show that Linstedt's failure to request an interpreter constituted ineffective assistance and that he, Gonzalez, was prejudiced thereby. The *Strickland* standard extends to assistance with guilty pleas. *See Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.... Judicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065.

■ However, Gonzalez has failed to demonstrate that Linstedt was ineffective with respect to recognizing Gonzalez's language difficulties. The record here reflects Linstedt's belief (bolstered by the finding of the district court that Gonzalez was competent) that, with the assistance of Gonzalez's wife, he had succeeded in conveying to Gonzalez the essence of the charges against him and the nature of the plea agreement. The only misunderstanding Gonzalez has actually claimed relates to the length of his sentence under the Guidelines, not the nature of the charges nor the maximum possible sentence. Moreover, he concedes that the mere fact that English was not his primary language did not mandate appointment of a qualified interpreter, which makes it far less likely that the alleged right should have been obvious to competent counsel in this situation. Given the totality of the circumstances, Linstedt's assistance with respect to Gonzalez's language difficulty was reasonable.

2. *Ineffective Assistance as to the Likely Sentence.*

■ The district court informed Gonzalez of the maximum possible sentences and fines

---

1. Gonzalez would have us conclude that, because he consulted his wife during the plea process, the district court "substituted" his wife's interpretive services for those of a qualified interpreter. However, the record does not indicate whether those consultations were for interpretation or, as

might also have been expected, for discussions of the advisability and implications of pleading guilty. In any event, Gonzalez's contention does not render the district court's determination clearly erroneous.

for the offenses to which he pleaded guilty. He responded affirmatively when asked if he was satisfied with Linstedt's representation of him. As a result, Gonzalez cannot claim he was prejudiced by Linstedt's alleged gross error in calculating the sentencing guidelines range and likely sentence. *See United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir.), *cert. denied*, 484 U.S. 832, 108 S.Ct. 107, 98 L.Ed.2d 66 (1987).

**AFFIRMED.**

REINHARDT, Judge, dissenting.

I dissent. Once again, "fairness and due process" take an unnecessary beating in the courts. How easy it would be to afford individuals the full rights Congress provided them. Instead, our careless and hasty treatment of criminal cases all too often makes it difficult for defendants to receive a fair trial.

Here, we narrowly, grudgingly, and erroneously apply the Court Interpreters Act, a statute designed to make certain that defendants understand what is happening to them during criminal proceedings. By reviewing the factual, but not the legal, basis for the district court's decision, the majority has created the misleading impression that the district court's casually, if not inadvertently, adopted approach to determining whether language difficulties inhibit a defendant's understanding constitutes an appropriate application of the Act.

Nothing in the legislative history or statutory language supports the narrow application of the Act by the district court. While the majority reaches the correct result with regard to the procedural default issue, I cannot endorse its failure to review *de novo* the district court's erroneous ruling. Although the majority's opinion limits itself to reviewing the district court's factual findings for clear error, my colleagues' haphazard treatment of Gonzalez's claim might lead another court to assume incorrectly that they have created a new legal standard for determining when an interpreter must be provided under the Act.[1]

The language of the Act is reasonably clear. It provides:

The presiding judicial officer ... shall utilize the services of the most available certified interpreter ... if the presiding judicial official determines on such officer's own motion or on the motion of a party that such party ...

(A) speaks only or primarily a language other than the English language ... so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer.

28 U.S.C. § 1827(d)(1). It is quite evident what the Act requires in this case. As soon as the presiding judicial officer became aware that Gonzalez primarily spoke Spanish, he should have immediately conducted a full factual inquiry into whether language difficulties in any way inhibited the defendant's comprehension of the proceedings.[2] As the Fifth Circuit noted in a case upon which the majority relies, "*any* indication to the presiding judicial officer that a criminal defendant speaks only or primarily a language other than the English language

---

1. I should also note, as I hope future panels will note, that the majority's opinion depends in part upon the fact that the defendant failed to object to the lack of an interpreter at trial.

2. By "full factual inquiry," I do not mean the cursory, half-hearted, and casual questioning by the magistrate judge in this case. The full text of this questioning is as follows:

Court: Do you understand?
Gonzalez: Yeah, little bit.
Court: What is your problem, language problem?
Gonzalez: Well, no. I don't know how to read that much. I understand. I understand.
The magistrate judge was on notice that the defendant could not read the plea agreement,

and even the brief exchange outlined above should have indicated that Gonzalez's understanding of the proceedings was inhibited by his inability to speak English.

The district judge followed a similar approach, apparently attempting to compensate for Gonzalez's inability to speak and understand English by asking only short, simple questions. The goal of the Act was to provide *qualified* interpreters for criminal defendants. *See infra* pp. 9121–23. A district judge cannot compensate for his failure to appoint an interpreter by asking the defendant only extremely basic questions. Ironically, in this case the defendant could not even follow the simple questions posed by the district judge, thus clearly indicating that he would be unable to comprehend the full implications of a complex plea agreement written in English.

should trigger the application of Sections (d) and (f)(1) of the Court Interpreters Act." *United States v. Tapia*, 631 F.2d 1207, 1209 (5th Cir.1980) (emphasis added).

In making its factual inquiry, the district court should have focused on a single question: did the fact that Gonzalez primarily spoke Spanish in any way "inhibit" his comprehension of the proceedings? That is what the plain language of the statute requires and, absent evidence to the contrary, a court must follow its common, everyday meaning. *See Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1067 (9th Cir.1994). The common meaning of "inhibit" is "hinder." *Random House Dictionary of the English Language* 732 (1979). Thus, the statutory language could not be clearer: a judicial officer *must* appoint an interpreter whenever the party in question speaks only or primarily a language other than English, unless his comprehension of the proceedings is not hindered.

Although I believe that the majority was required to reverse under *any* standard, its error stems in large part from its unfortunate decision to review the district court's factual finding for clear error instead of reviewing its legal conclusions *de novo*. Had my colleagues properly reviewed the district court's legal conclusions under the appropriate standard, I believe they would not have voted to affirm the decision to deny Gonzalez the benefit of an interpreter. There is absolutely no indication in the statute or its legislative history that a defendant must have a "major" language problem to be granted an interpreter, and the district court erred in reading such an additional requirement into the Act. Congress mandated the appointment of interpreters *whenever* a "language-handicapped" defendant's comprehension of the proceedings is impaired because Congress concluded that the appointment of an interpreter represents "a fundamental premise of fairness and due process for all."

H.Rep. No. 1687, 95th Cong.2d Sess. 4 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4652, 4654 (quoting Congressman Fred Richmond). Whether the defendant suffers from a major language problem is irrelevant under the statute. The only question, and the sole permissible inquiry, in the case of defendants like Gonzalez is whether the defendant's comprehension is impaired for purposes of the judicial proceeding. Any other inquiry is improper. Had the majority examined the language and purpose of the statute in a more attentive manner, it surely would not have ignored such a clear congressional mandate.

The reason that Congress chose the standard outlined in the statute, and why the district court erred in applying a different one, is quite evident from what occurred below. Many people may be capable of speaking enough rudimentary English to function at a very basic level in this country but lack the ability to comprehend complex criminal proceedings. Others may speak English so fluently that, even though English represents their second language, they can follow the most complicated of criminal proceedings. Congress presumably had the latter group in mind when it required that language difficulties "inhibit" the defendant's comprehension of the proceedings for an interpreter to be appointed. This provision is designed to prevent the appointment of an interpreter when one is wholly unnecessary rather than to subdivide those who cannot speak English fluently into groups with "major" or "minor" difficulties.

In this case, as the majority itself notes, the record indicates that both judges quickly perceived that Gonzalez did not speak English well, that the defendant's responses were "brief and somewhat inarticulate," and that he could not read English at all. Gonzalez's marked inability to respond to simple, direct questions provides a strong indication that language difficulties prevented him from fully comprehending the proceedings against him.[3]

---

**3.** For example, Gonzalez was only capable of responding to the district judge's questions when they involved a "yes" or "no" answer; whenever the district court asked a question requiring a slightly more complicated answer, Gonzalez's answers were non-responsive, even when he was coached by his lawyer. Consider the following exchanges:

A defendant's full comprehension of criminal proceedings implicates cherished constitutional values. *See United States v. Lim,* 794 F.2d 469, 470 (9th Cir.), *cert. denied sub nom Dong Joon Ahn v. United States,* 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986); H.Rep. No. 1687, 95th Cong., 2d Sess. 3–5 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4652, 4653–54. A failure to understand those proceedings leads to the most serious of consequences. Indeed, as in this case,[4] a defendant's inability fully to comprehend the proceedings against him may determine their outcome.

Had the district court made the proper inquiry using the correct legal standard, we would have had a fully developed record to evaluate the defendant's claim. In this case, however, we do not. All we know is that the questioning was cursory and that the district judge found that the defendant did not have a "major" language problem. Because there is absolutely no basis for concluding that, under the proper statutory standard, this primarily Spanish-speaking defendant did not need an interpreter, we should reverse the district court's decision.

Finally, the majority's unfortunate decision to review only the factual, and not the legal, basis for the district court's decision has led my colleagues to err in an additional respect. The district court based its decision in part upon the fact that Gonzalez had been assisted by his wife in explaining the proceedings to him. Relying upon such a factual finding is directly contrary to the clear mandate of the Act, which is to provide *qualified, impartial* interpreters to criminal defendants who are language impaired. Again, had the majority reviewed the district court's legal conclusions *de novo,* I believe it would not have affirmed the district court's decision. In-

stead, it would have paid close attention to the House Report accompanying the Act, which clearly notes that "the appointment of certified interpreters is designed to insure *not only an accurate translation but also an impartial one.*" H.Rep. No. 1687, 95th Cong., 2d Sess. 5 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4652, 4656 (emphasis added). The district court had no evidence that Gonzalez's wife was an accurate or impartial interpreter; to the contrary, the fact that she was a *codefendant* in the case renders her involvement highly questionable. Accordingly, the district court's reliance upon the assistance of Gonzalez's wife in making its determination was improper as a matter of law.

I am extremely concerned that the majority's erroneous approach to this appeal may create the misleading impression that this decision involves something more than a review of a factual finding under the clear error standard. Regrettably, that is all that occurred here. I respectfully dissent.

---

District Judge: Would you tell me what your understanding of Count 1 of the indictment is; that is, the conspiracy charge? What do you think they are charging you with by alleging you participated in the conspiracy?

Gonzalez's Lawyer: He is asking you on the conspiracy what does that mean [sic]. What are you charged with? What did you do?

Gonzalez: With the telephone call?

. . . .

District Judge: What did you do? Did you work with other people to buy drugs and sell them?

Gonzalez: I used the telephone.

. . . .

District Judge: The point is, if you enter a plea of guilty now, you can't withdraw it later because you don'tlike [sic] the sentence that you get.

Gonzalez: Yes.

4. Gonzalez claims that he would not have pleaded guilty had he understood the proceedings against him.